IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| HARDY LASSITER, III, # 318454, | ) Civil Action No. 3:07-885-HFF-JRM |
| Plaintiff, | ) |
| vs. | ) |
| WILLIAM REECE; | ) |
| T. SUBER; | ) |
| OFFICER DEAN; | ) |
| H. A. EDWARDS; | ) |
| L. D. SMITH; | ) |
| J. L. HALL; | ) |
| KEN COLLINS; | ) |
| J. D. BURGESS; | ) |
| JOHN ERIC GALLMAN; | ) |
| SHERIFF CHUCK WRIGHT; | ) |
| JOHN DOE; | ) |
| JANE DOE; AND | ) |
| SPARTANBURG PUBLIC SAFETY DEPARTMENT, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants, | ) |

Plaintiff filed this action on April 2, 2007.[1] His allegations concern his arrest on October 6, 2005. Plaintiff is currently an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections. On January 14, 2008, Defendants Spartanburg Public Safety Department ("SPSD") and SPSD police officers William Reece ("Reece"), Timothy Suber ("Suber"), Matthew Dean ("Dean"), Harold Edwards ("Edwards"), Leslie Smith ("Smith"), J. L. Hall ("Hall"), Ken Collins ("Collins"), John Burgess ("Burgess"), and John Eric Gallman ("Gallman"), collectively the "SPSD Defendants," filed a motion for summary judgment. Because

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

Plaintiff is proceeding pro se, he was advised on January 22, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint. On February 11, 2008, Defendant Chuck Wright filed a motion to dismiss. A second Roseboro Order was issued on February 13, 2008. On February 14, 2008, Plaintiff filed a response in opposition to summary judgment. The SPSD Defendants filed a reply on February 22, 2008.

## DISCUSSION

Plaintiff alleges that he was subjected to "police brutality" on October 6, 2005. He claims that he was walking down the street when a burgundy car stopped and two officers looked at him, shook their heads as if to say "no," and proceeded forward. Then, a Spartanburg Public Safety vehicle stopped in the street after passing him. Officer Reece jumped out of the vehicle, pointed his gun at Plaintiff and said "hey, stop freeze." Plaintiff jumped back, threw up his hands, and said "what's going on?" Reece told Plaintiff to get down and, Plaintiff got down on his knees and asked "hey man, what's going on?" to which Officer Reece responded "lay down." Plaintiff claims that as he laid forward, Reece opened the back door of the police vehicle, and let out a K-9 named Aiko who started charging toward Plaintiff. The K-9 began tearing into Plaintiff's forearm, as Reece ran towards Plaintiff, pointing his gun. As Reece patted Plaintiff down, he asked Plaintiff "where's the gun, where's the money?" Plaintiff "made Officer Reece aware" that he had no idea what Reece was talking about. Plaintiff claims that the K-9 continued to bite him multiple times on his forearm, Reece did not intervene to stop the attack, and Reece refused Plaintiff's request to get the dog off him. Additionally, Plaintiff claims that officers Dean, Suber, Edwards, Smith, Hall, Collins, Burgess, Gallman, John Doe, and Jane Doe laughed and smiled about the situation and did not

intervene. Plaintiff asked the officers to get the dog, but Officer Reece said "no, no." Plaintiff began to scramble around a little to get the K-9 to release his side, Plaintiff was losing blood, and Suber pointed a gun at Plaintiff's side. The K-9 released Plaintiff's side, bit into Plaintiff's lower facial area, and then released Plaintiff's face. Plaintiff claims that he has had problems with his arm and pains in his side since the incident occurred, as well as bad dreams. Complaint at 3-4.

Defendants provide[2] that an armed robbery occurred at Dale's Quickstop store at 708 West Main Street in Spartanburg at approximately 10:00 a.m. on October 6, 2005. Dispatch advised that two black males robbed Dale's Quickstop at gunpoint and a black female was driving a burgundy getaway car. Witnesses described the individuals as wearing dark clothes and masks and stated that the burgundy car turned right off West Main Street onto Westmoreland Street. At approximately 10:12 a.m., officers were advised that the suspect vehicle was abandoned on Westmoreland Street and two black males and a black female carjacked a white Chevrolet Astrovan at gunpoint from Stephen Bruner on Westmoreland Street.

Officer Reece states that when he arrived on Arch Street, he observed two black males dressed in all black (matching the description of the armed robbery and carjacking suspects) running toward a residence on Arch Street. Reece yelled for the suspects to stop and warned that the would send the Department's K-9 dog, Aiko, if they did not stop. Both suspects kept running and K-9 Aiko was deployed. The K-9 apprehended one suspect, later identified as Plaintiff. The other suspect kept running and was seen running behind a house on Arch Street.

---

[2]The facts provided by Defendants are based on the affidavits of Gail Whelchel, William Reece, Incident Reports, and Witness Forms.

3

Officer Suber held Plaintiff at gunpoint while Officer Dean handcuffed him. Reece and K-9 Aiko ran behind the Arch Street house, where Reece observed a crawl space. Reece yelled that he was going to release a police dog, received no response, and let K-9 Aiko go into the crawl space. Reece states that he had K-9 Aiko return to the entrance of the crawl space as soon as he heard a yell from underneath the house. The suspect, later identified as Yahya Muqit ("Muqit") emerged, was handcuffed, and arrested. Two firearms were retrieved from under the Arch Street house. Three more weapons, a black shirt, and a bag of money were located near the house.

Defendant Chuck Wright contends that his motion to dismiss should be granted because neither he nor the Spartanburg County Sheriff's Department were involved in the alleged incidents. The SPSD Defendants contend that they are entitled to summary judgment because: (1) Plaintiff alleges no constitutional violation by the SPSD; (2) the individual officers who were not personally involved in Plaintiff's arrest or the procurement of the arrest warrants are not proper defendants;[3] (3) there was probable cause for Plaintiff's arrest;[4] (4) Defendants are entitled to summary judgment

---

[3]The SPSD Defendants provide that Reece is the only officer who controlled and released K-9 Aiko, Suber held Plaintiff at gunpoint while Dean handcuffed him, and Collins procured the arrest warrants. SPSD Motion for Summary Judgment at 6.

[4]Defendants contend that Plaintiff fails to establish a claim for false arrest or false imprisonment because, prior to Plaintiff's arrest, the officers had information that two black males robbed Dale's Quickstop on West Main Street at gunpoint, a black female drove the getaway (burgundy) car, witnesses described the individuals as wearing dark clothing and masks, the burgundy car turned right onto Westmoreland Street, the suspected vehicle was abandoned on Westmoreland Street, two black males and a black female matching the description of the armed robbers carjacked a white Chevrolet Astrovan at gunpoint on Westmoreland Street, the white van was abandoned on Wofford Street, two black males wearing black jumped out of the van and ran toward Arch Street, and an officer spotted two black males wearing all black running from Eloise Street toward Arch street. Additionally, Defendant Reece personally observed two black males dressed in black running toward Arch Street. Defendants also state that the events occurred within a matter of moments within a small geographical area. Additionally Defendants contend that they
(continued...)

4

as to Plaintiff's excessive force claim; and (5) the police officers are entitled to qualified immunity.

    1.    <u>John Doe/Jane Doe</u>

Plaintiff named "John Doe" and "Jane Doe" as Defendants to this action. In the undersigned's June 4, 2007 order, Plaintiff was warned that he had to provide information sufficient to identify these Defendants on the Forms USM-285, the United States Marshal could not serve a defendant who was not properly identified, and any Defendants not served were subject to being dismissed as parties to this action. In the order, Plaintiff's attention was also directed to Rule 4(m) which provides that unless a particular defendant is served within 120 days after the complaint is filed, the court may dismiss an action without prejudice as to that particular defendant. <u>See</u> Doc. 14. Plaintiff has not shown that Defendants John Doe and Jane Doe were ever properly identified and has not shown that they were served. It is, therefore, recommended that Defendants John Doe and Jane Doe be dismissed <u>sua</u> <u>sponte</u> pursuant to Rule 4(m).[5]

---

[4](...continued)
had probable cause to arrest Plaintiff because he attempted to flee once instructed to stop, a Municipal Court Judge issued arrest warrants on the same day as Plaintiff's arrest, there is no allegation that the arrest warrants were not facially valid, and Plaintiff was convicted at a jury trial of armed robbery and carjacking.

In his memorandum in opposition to summary judgment, Plaintiff states that he has not alleged false arrest or false imprisonment. He, however, disputes that he was wearing the clothing listed in the search warrant issued on October 7, 2005. The SPSD Defendants erroneously referenced the search warrant for Muqit's clothing in their motion for summary judgment and note this mistake in their Reply. The search warrant for Plaintiff (attached to the SPSD Defendants' Motion for Summary Judgement) describes the clothing sought as a black long sleeved t-shirt, black pants, and black high top shoes. Pictures (also attached to the SPSD Defendants' Motion for Summary Judgment) taken after Plaintiff's arrest show him wearing what appears (the photograph provided to the court is in black and white, not color) to be dark pants, a dark shirt, and dark high top shoes.

[5]Rule 4 provides, in part,
If a defendant is not served within 120 days after the complaint is filed, the court--on
(continued...)

     2.    <u>SPSD</u>

The SPSD contends that Plaintiff has alleged no constitutional violation against it. Plaintiff has made no allegations that the SPSD by its own actions proximately caused any constitutional violations against Plaintiff. Further, he has not shown that the SPSD should be held liable on a theory of municipal or supervisory liability.

     3.    <u>Chuck Wright</u>

Defendant Chuck Wright ("Wright") is the Sheriff of Spartanburg County. Wright contends that his motion to dismiss should be granted because neither Wright nor the Spartanburg County Sheriff's Department were involved in Plaintiff's arrest on October 6, 2005, and Wright was apparently misidentified by Plaintiff in this action. Review of the Complaint reveals that Plaintiff has not made any allegations against Wright. Defendant Wright states that the Spartanburg County Sheriff's Office played absolutely no role in the investigation, arrest, or prosecution of Plaintiff in this matter; his review of the paperwork in this action reveals that the only entity involved in Plaintiff's arrest was the SPSD and that all of the individuals named in this action, with the exception of Wright, are employed by the SPSD; the Spartanburg County Sheriff's Office is a completely separate entity and has no affiliation with the SPSD; and neither Wright, nor anyone employed by the Spartanburg County Sheriff's Office, had any involvement in the arrest of Plaintiff on or about October 6, 2005. Wright Aff. Plaintiff fails to state a claim against Defendant Wright. Thus, it is recommended that Defendant Wright's motion to dismiss be granted.

---

[5](...continued)
motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.
Fed. R. Civ. P. 4(m).

4.       Excessive Force/Fourth Amendment Claim

Plaintiff alleges that Defendants used excessive force against him in the process of arresting him. Defendants contend that Plaintiff fails to establish a constitutional violation because the force used (including using K-9 Aiko) was objectively reasonable and Plaintiff suffered only de minimis injuries.

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. Graham v. Connor, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985)(quoting United States v. Place, 462 U.S. 696, 703 (1983), see also Lester v. City of Chicago, 830 F.2d 706, 711 (7th Cir. 1987). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. Garner, 471 U.S. at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). In striking this balance, due regard must be given to the fact that police officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. See Lester, 830 F.2d at 712; see also Garner, 471 U.S. at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The court must also consider the extent of the injuries caused to the plaintiff. See Jones v. Buchanan, 325 F.3d 520, 530-31 (4th Cir. 2003)(internal citations omitted);

see also Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002). The reasonableness of the officers' use of force must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (recognizing that the police must often make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving").

The standard of "reasonableness" under the Fourth Amendment is wholly objective; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation. Scott v. United States, 436 U.S. 128, 137-38 (1977); see Terry v. Ohio, 392 U.S. 1, 21-22 (in assessing the reasonableness of a particular search or seizure "it is imperative that the facts be judged against an objective standard"). Subjectively bad intentions on the part of the individual officer will not make a constitutional violation out of an otherwise reasonable seizure; nor will subjectively good intentions render an objectively unreasonable seizure constitutional. Id.; see Lester, 830 F.2d at 712. The clearly established standard for the use of excessive force at the time of this incident was whether a reasonable officer in the defendants' place could have had probable cause to believe that the plaintiff posed a threat of serious harm to others. See Garner, 471 U.S. at 11.

Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them. The officers, from the reports of witnesses and their own observations, had reason to believe that Plaintiff committed an armed robbery and carjacking. They also had reason to believe that the perpetrators were still armed. Guns were later recovered from under and near the house where Muqit ran. Reece states that he yelled for the suspects to stop, but they kept running. See Reece Aff., Incident Reports.

8

Additionally, Plaintiff fails to show more than de minimis injury. Richie v. Jackson, 98 F.3d 1335, 1996 WL 585152, *2 (4th Cir. 1996)[Table]; Joos v. Ratliff, 97 F.3d 1125, 1126 (8th Cir.1996) (per curiam) ("de minimis" amount of force in effecting an arrest would be insufficient to create constitutional issue). Where a plaintiff can point to no evidence of visible injury at the time of the incident and can point to no medical evidence of serious lasting injuries caused by any alleged use of force, a plaintiff's unsubstantiated claims of permanent injury are entitled to little weight. See Foster v. Metropolitan Airports Comm'r, 914 F.2d 1076, 1082 (8th Cir.1990)(claims of nerve damage and pain, without medical records establishing long-term injury, insufficient to demonstrate use of excessive force). Where a plaintiff's claims of serious injury are entitled to little weight, so are his claims of excessive force. Cooper v. City of Virginia Beach, 817 F. Supp. 1310, 1318 (E.D.Va.1993) ("lasting or serious injury" must be proven to escape summary judgment in excessive force case), aff'd, 21 F.3d 421 (4th Cir.1994) [Table]. Plaintiff was taken to the Emergency Department at the Spartanburg Regional Medical Center. Plaintiff's hospital records reveal that the bite marks to his arm were cleaned and Neosporin and a bandage were applied, his facial wound was cleaned and Neosporin was applied, he received a Tetnus shot, and he received a prescription for an antibiotic. There is no record of any further treatment being needed. The photographs of Plaintiff after the incident also support the SPSD Defendants' contention that Plaintiff's injuries were de miminis. See Photographs Attached to SPSD Defendants' Motion for Summary Judgment.

5. Negligence

To the extent that Plaintiff claims that Defendants were negligent in not stopping the alleged attack, he fails to establish a § 1983 claim. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 238-36 & n. 3 (1986); Ruefly v. Landon,

9

825 F.2d 792, 798-94 (4th Cir. 1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995). Furthermore, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago Dep't. of Social Services, 489 U.S. 189, 200-03 (1989).

      6.      Immunity

The SPSD police officers contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that the SPSD police officers violated any of his clearly established constitutional or statutory rights. Therefore, Defendants Reece, Suber, Dean,

10

Edwards, Smith, Hall, Collins, Burgess, and Gallman are entitled to qualified immunity in their individual capacities.

7.     State Law Claims

As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

CONCLUSION

Based on review of the record, it is recommended that the motion of summary judgment of Defendants Spartanburg Public Safety Department, Reece, Suber, Dean, Edwards, Smith, Hall, Collins, Burgess, and Gallman (Doc. 30) be granted and Chuck Wright's motion to dismiss (Doc. 35) be granted. It is also recommended that Defendants John Doe and Jane Doe be dismissed sua sponte without prejudice.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

June 13, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).